NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0321n.06

No. 22-3876

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 13, 2023
DEBORAH S. HUNT, Clerk

CHARLES J. LEVERT, II,

    Plaintiff-Appellee,

v.

MONTEFIORE HOME, *et al.*,

    Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

OPINION

Before: CLAY, KETHLEDGE, and LARSEN, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Charles J. Levert II brought this wrongful death action on behalf of his father, who contracted COVID-19 and died while living at the Montefiore nursing home in Beachwood, Ohio. Levert sued Montefiore and associated defendants in Ohio state court, asserting negligence and related state-law claims. Defendants removed the action to the federal district court, but the district court remanded the case to state court. Montefiore appeals that order, arguing: (1) that Levert's claims are completely preempted by the Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 247d-6d(d), 247d-6e (the "PREP Act"); and (2) that the case is removable under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). For the reasons set forth below, we **AFFIRM**.

## I. BACKGROUND

### A. Factual Background

Levert asserts claims against Defendants Montefiore Home and Menorah Park Center for Senior Living (collectively, "Montefiore"). The following factual summary is based upon the

allegations in Levert's complaint.  *See Hudak v. Elmcroft of Sagamore Hills*, 58 F.4th 845, 850 (6th Cir. 2023) (providing factual summary "[a]s alleged in the complaint").

Levert's father, Charles J. Levert, Sr. ("Charles"), was a resident at Montefiore until he died from complications related to COVID-19 on November 18, 2020.  Levert alleges that Charles died as a direct result of Montefiore's negligence.  Specifically, Levert alleges that Montefiore: (1) failed to provide appropriate infection control measures; (2) failed to provide appropriate COVID-19 testing; (3) conducted improper testing for COVID-19 and falsified test results. Compl., R. 1-2, Page ID #12–13.  Levert also avers that Montefiore's misrepresentation of residents' COVID-19 status "was material" to his family's decision to keep Charles at Montefiore. *Id.* at Page ID #22.  Throughout his complaint, Levert alleges that Montefiore behaved "negligently, recklessly, willfully and/or wantonly."  *Id.* at Page ID #12.

## B.  Procedural History

Levert commenced this action wrongful death action by filing his complaint in the Court of Common Pleas for Cuyahoga County, Ohio on November 12, 2021.  Montefiore removed the case to the federal district court the next month.  In its notice of removal, Montefiore contended that the PREP Act completely preempted Levert's state law claims and that the federal-officer removal statute applied because Montefiore was "acting under federal officers and/or agencies." Notice of Removal, R. 1, Page ID #2–3.

Levert filed a motion to remand the case to state court, which the district court granted. Montefiore's timely appeal followed.

## II. DISCUSSION

### A. Standard of Review

The Court reviews *de novo* a "district court's determination that it lacked subject-matter jurisdiction and its consequent decision to issue a remand order." *Hudak*, 58 F.4th at 851 (quoting *Mays v. City of Flint*, 871 F.3d 437, 442 (6th Cir. 2017)). The "party requesting a federal forum . . . bears the burden of establishing federal jurisdiction." *Id.* at 852 (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)).

### B. Analysis

Montefiore contends that removal was proper, and remand was therefore improper, because (1) the PREP Act completely preempts Levert's claims, and (2) the federal officer removal statute applies. The Court addresses each argument in turn.

#### 1. Complete Preemption

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc.*, 482 U.S. at 392. Where there is not diversity of citizenship, "federal-question jurisdiction is required" to remove a case. *Id.* To determine whether federal-question jurisdiction exists, courts apply "the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112–13 (1936)). The well-pleaded complaint rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.*

Preemption generally serves as a defense, rather than a basis for removal. *Id.* However, where complete preemption exists, removal is proper. *Id.* Complete preemption exists where "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law

complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). Complete preemption is so rare that "[t]he Supreme Court has found only three provisions of federal law to be completely preemptive: § 301 of the Labor Management Relations Act ('LMRA'), § 502(a)(1)(B) of the Employee Retirement Income Security Act ('ERISA'), and §§ 85 and 86 of the National Bank Act." *Hudak*, 58 F.4th at 852 (citing *AmSouth Bank v. Dale*, 386 F.3d 763, 776 (6th Cir. 2004)). The Supreme Court found that those provisions were completely preemptive because they "provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Id.* at 852–53 (quoting *Roddy v. Grand Trunk W. R.R. Inc.*, 395 F.3d 318, 323 (6th Cir. 2005)). Where complete preemption does exist, "a federal statute will completely preempt only those state-law claims that fall within the scope of the federal cause of action." *Id.* at 853 (citing cases).

### a. The PREP Act and the 2020 Declaration

"Congress enacted the PREP Act in 2005 '[t]o encourage the expeditious development and deployment of medical countermeasures during a public health emergency' by allowing the [Health and Human Services, or HHS] Secretary 'to limit legal liability for losses relating to the administration of medical countermeasures such as diagnostics, treatments, and vaccines.'" *Id.* at 849 (alterations in original) (quoting *Cannon v. Watermark Ret. Cmtys., Inc.*, 45 F.4th 137, 139 (D.C. Cir. 2022)). To fulfill that purpose, the PREP Act "grants immunity from federal and state liability to 'covered person[s] . . . with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure' if the HHS Secretary has issued a declaration under the Act 'with respect to such countermeasure.'" *Id.* (alterations in original) (quoting 42 U.S.C. § 247d-6d(a)(1)). However,

Congress limited such immunity to claims that have "a causal relationship with the administration to or use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1)(B). Additionally, the PREP Act "ensures that its grant of immunity does not foreclose all possible relief for harms caused by the administration or use of covered countermeasures by creating a 'Covered Countermeasure Process Fund' and a corresponding administrative compensation scheme." *Hudak*, 58 F.4th at 849 (quoting 42 U.S.C. § 247d-6e(a)).

The PREP Act also includes an exception to its grant of immunity by providing "an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct." 42 U.S.C. § 247d-6d(d)(1). For the purposes of that exception, "willful misconduct" is "an act or omission that is taken (i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit." *Id.* at § 247d-6d(c)(1)(A). Congress stipulated that willful misconduct "shall be construed as establishing a standard for liability that is more stringent than a standard of negligence in any form or recklessness." *Id.* at § 247d-6d(c)(1)(B). "Lastly, the Act requires all claims asserted under it to be brought before a three-judge panel in the District Court for the District of Columbia and to meet certain special pleading standards." *Hudak*, 58 F.4th at 850 (citing 42 U.S.C. § 247d-6d(e)(1)–(9)).

In March 2020, the HHS Secretary issued its Declaration Under the [PREP] Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198 (the "Declaration"). In that Declaration, the Secretary declared that COVID-19 was a public health emergency under the PREP Act. *Id.* at 15198. In response to that emergency, the Secretary recommended "the manufacture, testing, development, distribution, administration, and use of the Covered Countermeasures." *Id.*

at 15201. "Covered Countermeasures" included "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19 . . . or any device used in the administration of any such product, and all components and constituent materials of any such product." *Id.* at 15202. The Secretary also provided that those "Covered Countermeasures must be 'qualified pandemic or epidemic products,' or 'security countermeasures,' or drugs, biological products, or devices authorized for investigational or emergency use."[1] *Id.*

### b. The PREP Act and Complete Preemption

*Hudak* is this Court's first published case concerning the PREP Act's preemptive effect. Accordingly, it controls. *See Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001). In *Hudak*, this Court recognized that "there is no question that the PREP Act has significant 'pre-emptive force.'" *Hudak*, 58 F.4th at 853 (quoting *Caterpillar*, 482 U.S. at 393). However, the Court held that where a plaintiff "do[es] not allege willful misconduct related to the administration or use of covered COVID-19 countermeasures," the PREP Act does not completely preempt state law claims. *Id.* Every other circuit to have considered the issue has reached the same conclusion. *See, e.g.*, *Solomon v. St. Joseph Hosp.*, 62 F.4th 54, 60–62 (2d Cir. 2023); *Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 406–13 (3d Cir. 2021); *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 584–88 (5th Cir. 2022); *Manyweather v. Woodlawn Manor, Inc.*, 40 F.4th 237, 242–46 (5th Cir. 2022); *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1213–14 (7th Cir. 2022); *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 687–88 (9th Cir. 2022).

---

[1] Since first issuing the Declaration, the Secretary has amended it eleven times, most recently on May 12, 2023. *See* Eleventh Amendment to Declaration Under the [PREP] Act for Medical Countermeasures Against COVID-19, 88 Fed. Reg. 30769.

*Hudak* held that the PREP Act's "general immunity provision," *i.e.*, 42 U.S.C. § 247d-6d(a)(1), "reflects 'an ordinary rule of preemption, a defense to liability under state law.'" *Hudak*, 58 F.4th at 853–54 (quoting *Martin*, 37 F.4th at 1213). Thus, § 247d-6d(a)(1) "does not create a federal cause of action that completely preempts covered state-law claims." *Id.* Instead, it "might or might not provide [Montefiore] with a viable defense in state court." *Id.* In other words, unless a plaintiff states a claim under § 247d-6d(d)(1), complete preemption is disqualified as a basis for removal. *Id.*

*Hudak* did not resolve whether § 247d-6d(d)(1) is completely preemptive. *See id.* at 854. Section 247d-6d(d)(1) establishes "an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct . . . by such covered person." 42 U.S.C. § 247d-6d(d)(1). "Unlike the general immunity provision, it is debatable whether § 247d-6d(d)(1) completely preempts certain state-law claims." *Hudak*, 58 F.4th at 854. After observing that "[o]ther federal courts of appeals have not reached a consensus as to whether the PREP Act completely preempts state-law claims that fall within the scope of § 247d-6d(d)(1)'s federal cause of action," the Court in *Hudak* "declin[ed] to decide whether § 247d-6d(e)(1) is completely preemptive." *Id.* The Court reasoned that it need not make such a determination because the plaintiff's claims did not fall within the scope of the federal cause of action. *Id.*

### i. *Determining Whether Levert's Claims Fall Under § 247d-6d(d)(1)*

The PREP Act establishes an exclusive federal cause of action for willful misconduct only. *Id.* As the Third Circuit observed, "[w]illful misconduct is a separate cause of action from negligence . . . . Congress could have created a cause of action for negligence or general tort liability. It did not. Just as intentional torts, strict liability, and negligence are independent causes

of action, so too willful misconduct under the PREP Act is an independent cause of action." *Maglioli*, 16 F.4th at 411 (citing Restatement (Second) of Torts § 519 cmt. d (Am. L. Inst. 1977)).

A plaintiff does not allege willful misconduct under § 247d-6d(d)(1) unless the pleading contains: (1) allegations *willful* misconduct related to the administration or use of covered COVID-19 countermeasures; *and* (2) allegations of "a 'causal relationship with the administration to or use by an individual of a covered countermeasure[.]'" *Hudak*, 58 F.4th at 853–55 (alteration in original) (quoting 42 U.S.C. § 247d-6d(a)(2)(B)).

This Court has already determined that allegations around the "*failure* to use countermeasures" do not fall under § 247d-6d(d)(1). *Id.* at 857 (emphasis added). Therefore, Levert's allegations that Montefiore failed to implement certain COVID-19 prevention measures do not fall under § 247d-6d(d)(1). *See id.* Similarly, although Levert alleges that Montefiore "conducted improper testing," he neither alleges that Montefiore did so willfully, nor does expressly state that the improper testing had a causal relationship with his father's death. Compl., R. 1-2, Page ID #13; *see* 42 U.S.C. § 247d-6d(a)(2)(B), 247d-6d(e)(3)(A). Therefore, that allegation does not constitute willful misconduct under the PREP Act.

However, this Court has not determined whether falsifying COVID-19 test results and withholding reports of positive tests constitute the "administration or use of covered COVID-19 countermeasures" under § 247d-6d(d)(1). As a matter of first impression, we find that they do not. "Setting aside the issue of what, if any, deference we owe to the Secretary's reading of the PREP Act," the Declaration "encompasses management and operation activities that are taken *for the purpose of distributing and dispensing countermeasures*." *Hudak*, 58 F.4th at 856–57. Falsifying COVID-19 test results cannot constitute the "administration . . . of a covered countermeasure," 42 U.S.C. § 247d-6d(a)(1), because falsifying and concealing test results are not activities "taken for

the purpose of distributing and dispensing countermeasures." *Hudak*, 58 F.4th at 856–57 (emphasis omitted).

Our holding is consistent with the district court in this case, as well as every other district court in this Circuit to consider the matter. *See* Mem. Op. and Order, R. 23, Page ID #222 ("[F]alsifying Covid-19 test results is not the 'administration' or 'use' of a covered countermeasure."); *Friedman v. Montefiore*, 610 F. Supp. 3d 1032, 1044 (N.D. Ohio 2022); *Nemeth v. Montefiore*, No. 1:21-CV-02064, 2022 WL 4779035, at *5 (N.D. Ohio Oct. 3, 2022); *Est. of Spring by Spring v. Montefiore Home*, No. 1:21-CV-02098-PAB, 2022 WL 1120381, at *5 (N.D. Ohio Apr. 14, 2022); *Burris v. Montefiore*, No. 1:21-CV-02107-PAB, 2022 WL 1120374, at *4 (N.D. Ohio Apr. 14, 2022); *Wimberly v. Montefiore*, No. 1:21-CV-02097-PAB, 2022 WL 1120394, at *5 (N.D. Ohio Apr. 14, 2022); *Rosen v. Montefiore*, 582 F. Supp. 3d 553, 561 (N.D. Ohio 2022); *Singer v. Montefiore*, 577 F. Supp. 3d 633, 643 (N.D. Ohio 2021).

Levert does not allege willful misconduct as defined by the PREP Act. *See Hudak*, 58 F.4th at 853–55. Accordingly, Montefiore's arguments concerning complete preemption fail and the Court need not decide whether the PREP Act's exclusive cause of action is completely preemptive. *See id.* at 854.

### 2. Federal Officer Removal Statute

Montefiore also asserts that Levert's claims are "removable because Defendants were specifically 'acting under' federal officers and federal authority in administering COVID-19 diagnostic tests—a 'covered countermeasure' designated as serving a public health function under the PREP Act." Appellants' Br. at 38.

A defendant may remove a state court action to federal court if the action is brought against:

[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual

capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1). "Federal courts have subject-matter jurisdiction over claims that are properly removed under § 1442(a)(1)." *Hudak*, 58 F.4th at 858 (citing *Mesa v. California*, 489 U.S. 121, 136 (1989)). In cases where the defendants are not federal officers, the removing defendants "must satisfy three requirements in order to invoke the federal-officer removal statute: (1) the defendants must establish that they acted under a federal officer, (2) those actions must have been performed under color of federal office, and (3) the defendants must raise a colorable federal defense." *Mays v. City of Flint*, 871 F.3d 437, 442–43 (6th Cir. 2017) (citing *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010)).

To demonstrate that it was acting under a federal officer, Montefiore "must show that it was 'in a relationship with the federal government where the government [was] functioning as the defendant's superior.'" *Hudak*, 58 F.4th at 858 (quoting *Mays*, 871 F.3d at 444). Such a "relationship typically involves subjection, guidance, or control." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 151 (2007) (quotation omitted). "In addition, precedent and statutory purpose make clear that the private person's 'acting under' must involve an effort to *assist,* or to help *carry out,* the duties or tasks of the federal superior." *Id.* at 152. Importantly, "the help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law." *Id.*

In *Hudak*, the defendants made the same argument that Montefiore makes here. The Court in *Hudak* expressly rebuffed the defendants' arguments that they were "acting under" a federal officer because they had to comply with federal mandates, and because they "performed a governmental function by helping to contain the spread of the COVID-19 virus." *Hudak*, 58 F.4th

at 859.  Montefiore's arguments fail for the same reason:  Montefiore "did not have an agreement with the federal government, did not produce a good or perform a service on behalf of the government, and has not shown that the federal government exercised control over its operations to such a degree that the government acted as [Montefiore's] superior." *Id.* at 859–60.  The Court's analysis in *Hudak* applies verbatim to the instant appeal.  Put simply, in passing the PREP Act, "Congress did not deputize all of these private-sector workers as federal officers." *Maglioli*, 16 F.4th at 406.  A party cannot invoke the federal officer removal statute simply because it complied with federal law.  *Watson*, 551 U.S. at 152.

## CONCLUSION

For the reasons stated above, the district court's order remanding this case to state court is **AFFIRMED**.