In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 21-2959

ANITA MARTIN, as administrator of the Estate of Marlene Hill,
*Plaintiff-Appellee*,

*v.*

PETERSEN HEALTH OPERATIONS, LLC, doing business as Bloomington Rehabilitation & Health Care Center,
*Defendant-Appellant*.

———————————

Appeal from the United States District Court
for the Central District of Illinois.
No. 1:20-cv-1449 — **Joe Billy McDade**, *Judge*.

———————————

ARGUED JUNE 2, 2022 — DECIDED JUNE 15, 2022

———————————

Before EASTERBROOK, ST. EVE, and JACKSON-AKIWUMI, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. In May 2020, while residing in a nursing home, Marlene Hill died of COVID-19. Her daughter Anita Martin, as administrator of her estate, sued in state court under the Illinois Nursing Home Care Act, 210 ILCS 45/1-101 to 45/3A-101. The nursing home removed to federal court, asserting that Martin's suit necessarily rests on federal

law, 28 U.S.C. §1441(a), and that it was "acting under" a federal officer for the purpose of 28 U.S.C. §1442(a)(1). The district judge found that neither statute authorizes removal and sent the case back to state court. 2021 U.S. Dist. Lᴇxɪs 180906 (C.D. Ill. Sept. 22, 2021).

Similar sequences have occurred all over the country. The parties tell us that more than 80 other suits have been removed and remanded in districts throughout the nation. Three courts of appeals have held that neither §1441(a) nor §1442(a)(1) permits removal of suits seeking damages on account of health-care providers' actions during the SARS-CoV-2 pandemic. *Maglioli v. Alliance HC Holdings LLC*, 16 F.4th 393 (3d Cir. 2021); *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580 (5th Cir. 2022); *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679 (9th Cir. 2022).

Because removal was based on a claim of right under §1442, we have appellate jurisdiction of all issues. See *BP p.l.c. v. Baltimore*, 141 S. Ct. 1532 (2021).

We start with §1442(a)(1), which permits the removal of cases in which a federal agency or officer, or "any person acting under that officer", is a defendant. The nursing home observes that it is subject to extensive federal regulation (especially if it hopes to be reimbursed under the Medicare or Medicaid program), and that orders issued by the Centers for Disease Control after the pandemic began have increased that regulatory burden. We do not doubt that the nursing home must comply with many federal requirements, but it has been understood for a long time that regulation does not turn a private entity into a public actor. See *Blum v. Yaretsky*, 457 U.S. 991 (1982) (holding this about the Medicaid program in

particular). See also, e.g., *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149 (1978); *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974).

The decisions we have just cited do not concern §1442(a)(1), but their holdings presaged others that do. For example, when the tobacco industry contended that extensive federal regulation enables it to remove under §1442, the Supreme Court replied that regulation *by* federal officers or agencies differs from "acting under" federal officers or agencies. *Watson v. Philip Morris Cos.*, 551 U.S. 142 (2007). Private firms retain their private character even when many aspects of their conduct are controlled by federal statutes and rules. We held the same about airframe manufacturers, although the web of federal air-safety regulation is comprehensive and the manufacturers hold authority to self-certify compliance with many rules. *Lu Junhong v. Boeing Co.*, 792 F.3d 805 (7th Cir. 2015). What is true about cigarette and airframe manufacturers is true about nursing homes as well. Nothing the CDC has said during the pandemic authorizes us to depart from the approach the Supreme Court took in *Watson* and *Blum*.

The argument for removal under §1441 is that federal law displaces all possible liability under state law so that any legal claim necessarily rests on federal law. This is the misleadingly named doctrine of "complete preemption." The name misleads because its focus is not on preemption (a defense to a state-law claim) but on federal occupation of a field. That happens only when federal law creates an "exclusive cause of action" and "set[s] forth procedures and remedies governing that cause of action," such that it "wholly displaces the state-law cause of action." *Beneficial National Bank v. Anderson*, 539 U.S. 1, 8 (2003).

As the nursing home sees things, the Public Readiness and Emergency Preparedness Act (PREP or the Act), 42 U.S.C. §247d to §247d–10, satisfies the Supreme Court's standard. Section 247d–6d(a)(1) forbids liability under state law for injuries caused by use of a "covered countermeasure", and §247d–6d(d)(1) creates a federal claim for injuries caused by "willful misconduct" in connection with covered countermeasures. The Secretary of Health and Human Services identifies covered countermeasures and specifies how they may or must be used (§247d–6d(b)(2)).

Section 247d–6d(a)(1) is an ordinary rule of preemption, a defense to liability under state law. It does not create a new federal claim. Section 247d–6d(d)(1), which does create a federal claim (payable from a federal fund), covers only a subset of potential wrongs, those involving willful misconduct in using covered countermeasures, and does not preempt any other kind of claim, let alone occupy the field of health safety.

Martin's complaint presents claims that not only arise under state law but are not even arguably preempted. She contends, for example, that the nursing home had too few nurses, permitted nurses to work when they were sick, and failed to isolate residents who showed signs of infection. None of these has anything to do with a "covered countermeasure." Face masks and other personal protective equipment are among the countermeasures defined by the Secretary, but Martin does not allege that face masks led to her mother's death; instead she alleges that the nursing home *failed to use* masks and other protective equipment. This is the opposite of a contention that a covered countermeasure caused harm.

Under the Act, if a nursing home administered one of the COVID-19 vaccines (which are covered countermeasures) to

a patient who had an allergic reaction, private liability under state law would be foreclosed—though that still would be a defense, to be asserted in state court. But vaccines did not become available until after Marlene Hill's death, nor was any other medication available. In May 2020 the medical profession had yet to discover that steroids help to treat COVID-19, while monoclonal antibody and other drug treatments were months in the future. Martin may or may not have a good claim as a matter of Illinois law, but it is not the sort of claim that has been wholly replaced by a claim for relief under federal law.

During both the prior presidential administration and the current one, the General Counsel of the Department of Health and Human Services has declared in letters and advisory opinions that the Act completely preempts all claims under state law related to COVID-19. See, e.g., Advisory Opinion 21-01 (Jan. 8, 2021) at 3–5, adopted by 86 Fed. Reg. 7,872 (Feb. 2, 2021). The reasoning is thin. Nor has the United States filed a brief as *amicus curiae*, in any court, elaborating on the thinking behind the General Counsel's declarations.

The nursing home asserts that these declarations have "the force of law" in light of 42 U.S.C. §247d–6d(b)(7), which forbids judicial review of "any action by the Secretary under this subsection." But the nursing home does not explain how the General Counsel is "the Secretary", how the General Counsel's opinion was issued "under this subsection" (which it does not purport to be), or why interpreting the Act in private litigation amounts to judicial review of a bureaucrat's opinion letter. The General Counsel's advisory opinions are not authorized by §247d–6d(b) ("this subsection"). They were not issued after notice and comment rulemaking or in the course of

administrative adjudication, so they are not entitled to *Chevron* deference. See *United States v. Mead Corp.*, 533 U.S. 218 (2001); *Christensen v. Harris County*, 529 U.S. 576, 587 (2000). They may be binding on the Secretary's subordinates within the Department, but they do not control the federal judiciary. Advisory Opinion 21-01 itself declares that it lacks the force or effect of law. The Department is not a party to this suit, and, under the approach of *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649–50 (1990), we apply the statute without an administrative overlay.

So much for complete preemption. Still, the nursing home insists, removal is proper under the approach of *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005). *Grable* holds that a claim may "arise under" federal law for the purpose of §1441 (and 28 U.S.C. §1331) when a federal issue, nominally a defense, is bound to be the only issue contested in the litigation. Many judges (including some of the Justices) have expressed doubts about that approach, but we need not decide whether to read *Grable* broadly or narrowly in light of those concerns. It is enough to say that the principal disputes requiring adjudication in this suit are likely to be issues such as whether the nursing home allowed members of the staff to work while ill, failed to isolate residents who contracted COVID-19, and so on. These issues have nothing to do with any federal statute, so the conditions that *Grable* sets for federal jurisdiction are not satisfied.

The parties have filed long briefs, and we have received several helpful *amicus* briefs to supplement them. It would be possible to go on at length discussing other legal issues. Given the three existing appellate opinions, however, an exhaustive

treatment is not necessary. We have said enough to show why this suit was properly remanded.

AFFIRMED