NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0320n.06

No. 22-3703

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jul 13, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| MARGARET FRIEDMAN, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| MONTEFIORE, *et al.*, | ) | |
| Defendants-Appellants. | ) | OPINION |
| | ) | |

Before: CLAY, KETHLEDGE, and LARSEN, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Margaret Friedman's mother died of COVID-19 while living at the Montefiore nursing home in Beachwood, Ohio. Friedman sued Montefiore and parties that own and operate it in Ohio state court, asserting negligence and related state-law claims. Defendants removed the action to the federal district court, but the district court remanded the case to state court. Montefiore appeals that order, arguing: (1) that Friedman's claims are completely preempted by the Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 247d-6d(d), 247d-6e (the "PREP Act"); and (2) that the case is removable under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). For the reasons set forth below, we **AFFIRM**.

## I. BACKGROUND

### A. Factual Background

The following factual summary is based upon the allegations in Friedman's complaint. *See Hudak v. Elmcroft of Sagamore Hills*, 58 F.4th 845, 850 (6th Cir. 2023) (providing factual summary "[a]s alleged in the complaint").

Friedman's mother, Mary L. Friedman ("Mary"), moved to Montefiore on February 24, 2020. She lived there until she died from COVID-19 on November 30, 2020. Defendant Montefiore is a nursing home located in Beachwood, Ohio. Defendants Montefiore Foundation, Montefiore Home, Montefiore Housing Corporation, and Menorah Park Foundation all own or operate Montefiore. Defendant Ariel Hyman worked at Montefiore as an administrator while Mary lived there. For clarity, the Court refers to Defendants collectively as Montefiore.

Friedman alleges that Mary died as a direct result of Montefiore's negligence. Her allegations fall into three general categories. First, she alleges that Montefiore "acted with reckless disregard" with respect to COVID-19 "quarantine [and] containment procedures," and that Mary contracted COVID-19 "as a direct result" of Montefiore's negligence. Compl., R. 1-1, Page ID #10. Specifically, she alleges that Montefiore (1) failed to "follow basic infection prevention procedures such as washing hands and wearing masks," (2) failed to screen and quarantine new residents for COVID-19, and (3) "forced employees [with COVID-19 symptoms] to work." *Id.* at Page ID #10–11. The second category concerns allegations that Montefiore "negligently, recklessly, and with malicious intent conduct[ed] improper testing and falsif[ied] tests[, and] intentionally hid the fact that other" Montefiore residents had contracted COVID-19. *Id.* In making those allegations, Friedman points to "the well published and admitted false testing by Defendants." *Id.* On appeal, Friedman avers that those allegations "refer[] to the highly publicized results of an Ohio Department of Health (ODH) investigation concerning an October 2020 COVID-19 outbreak at the facility." Appellee Br. at 3–4. The final category involves the care Montefiore provided once Mary contracted COVID-19. On that front, Friedman alleges that when Mary "exhibited signs and symptoms requiring emergency hospitalization and treatment . . .

Defendants failed to provide emergency hospitalization and treatment, referral to a doctor[,] and oxygen." Compl., R. 1-1, Page ID #10.

### B. Procedural History

Friedman commenced this action "for medical malpractice and/or nursing home neglect and wrongful death" by filing her complaint in the Court of Common Pleas for Cuyahoga County, Ohio on October 27, 2021. Montefiore removed the case to the federal district court the next week. In the notice of removal, Montefiore asserted that the case was removable under 28 U.S.C. §§ 1441(a) and 1331. Specifically, Montefiore contended that the PREP Act completely preempted Friedman's state law claims. The next month, Montefiore filed an amended notice of removal that invoked the federal officer removal statute, 28 U.S.C. § 1442(a)(1), as another basis for removal. Montefiore asserted that the federal-officer removal statute applied because it was "acting under federal officers and/or agencies." Am. Notice of Removal, R. 12, Page ID #59.

Friedman filed a motion to remand the case to state court, which the district court granted. In granting the motion to remand, the district observed that Friedman "appears [in her complaint] to be raising state law claims for medical malpractice, nursing home neglect, survivorship, and wrongful death." Order of Remand, R. 19, Page ID #243. The district court then observed that "the 'well-pleaded complaint rule' . . . makes the plaintiff the master of her claims, and she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* at Page ID #246 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). The district court ultimately rejected both of Montefiore's bases for removal, holding that the PREP Act does not completely preempt Friedman's claims and that the federal officer removal statute does not apply. Montefiore's timely appeal followed.

## II.   DISCUSSION

### A.  Standard of Review

The Court reviews *de novo* a "district court's determination that it lacked subject-matter jurisdiction and its consequent decision to issue a remand order." *Hudak*, 58 F.4th at 851 (quoting *Mays v. City of Flint*, 871 F.3d 437, 442 (6th Cir. 2017)).  The "party requesting a federal forum . . . bears the burden of establishing federal jurisdiction." *Id.* at 852 (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)).

### B.  Analysis

Montefiore contends that removal was proper because (1) the PREP Act completely preempts Friedman's claims, and (2) the federal officer removal statute applies.  The Court addresses each argument in turn.

#### 1.  Complete Preemption

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc.*, 482 U.S. at 392.  Where there is not diversity of citizenship, "federal-question jurisdiction is required" to remove a case. *Id.*  To determine whether federal-question jurisdiction exists, courts apply "the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112–13 (1936)).  The well-pleaded complaint rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.*

Preemption generally serves as a defense, rather than a basis for removal. *Id.*  However, where complete preemption exists, removal is proper. *Id.*  Complete preemption exists where "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law

- 4 -

complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). Complete preemption is so rare that "[t]he Supreme Court has found only three provisions of federal law to be completely preemptive: § 301 of the Labor Management Relations Act ('LMRA'), § 502(a)(1)(B) of the Employee Retirement Income Security Act ('ERISA'), and §§ 85 and 86 of the National Bank Act." *Hudak*, 58 F.4th at 852 (citing *AmSouth Bank v. Dale*, 386 F.3d 763, 776 (6th Cir. 2004)). The Supreme Court found that those provisions were completely preemptive because they "provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Id.* at 852–53 (quoting *Roddy v. Grand Trunk W. R.R. Inc.*, 395 F.3d 318, 323 (6th Cir. 2005)). Where complete preemption does exist, "a federal statute will completely preempt only those state-law claims that fall within the scope of the federal cause of action." *Id.* at 853 (citing cases).

### a. The PREP Act and the 2020 Declaration

"Congress enacted the PREP Act in 2005 '[t]o encourage the expeditious development and deployment of medical countermeasures during a public health emergency' by allowing the [Health and Human Services, or HHS] Secretary 'to limit legal liability for losses relating to the administration of medical countermeasures such as diagnostics, treatments, and vaccines.'" *Id.* at 849 (alterations in original) (quoting *Cannon v. Watermark Ret. Cmtys., Inc.*, 45 F.4th 137, 139 (D.C. Cir. 2022)). To fulfill that purpose, the PREP Act "grants immunity from federal and state liability to 'covered person[s] . . . with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure' if the HHS Secretary has issued a declaration under the Act 'with respect to such countermeasure.'" *Id.* (alterations in original) (quoting 42 U.S.C. § 247d-6d(a)(1)). However,

Congress limited such immunity to claims that have "a causal relationship with the administration to or use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1)(B). Additionally, the PREP Act "ensures that its grant of immunity does not foreclose all possible relief for harms caused by the administration or use of covered countermeasures by creating a 'Covered Countermeasure Process Fund' and a corresponding administrative compensation scheme." *Hudak*, 58 F.4th at 849 (quoting 42 U.S.C. § 247d-6e(a)).

The PREP Act also includes an exception to its grant of immunity by providing "an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct." 42 U.S.C. § 247d-6d(d)(1). For the purposes of that exception, "willful misconduct" is "an act or omission that is taken (i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit." *Id.* at § 247d-6d(c)(1)(A). Congress stipulated that willful misconduct "shall be construed as establishing a standard for liability that is more stringent than a standard of negligence in any form or recklessness." *Id.* at § 247d-6d(c)(1)(B). "Lastly, the Act requires all claims asserted under it to be brought before a three-judge panel in the District Court for the District of Columbia and to meet certain special pleading standards." *Hudak*, 58 F.4th at 850 (citing 42 U.S.C. § 247d-6d(e)(1)–(9)).

In March 2020, the HHS Secretary issued its Declaration Under the [PREP] Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198 (the "Declaration"). In that Declaration, the Secretary declared that COVID-19 was a public health emergency under the PREP Act. *Id.* at 15198. In response to that emergency, the Secretary recommended "the manufacture, testing, development, distribution, administration, and use of the Covered Countermeasures." *Id.*

at 15201. "Covered Countermeasures" included "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19 . . . or any device used in the administration of any such product, and all components and constituent materials of any such product." *Id.* at 15202. The Secretary also provided that those "Covered Countermeasures must be 'qualified pandemic or epidemic products,' or 'security countermeasures,' or drugs, biological products, or devices authorized for investigational or emergency use."[1] *Id.*

### b. The PREP Act and Complete Preemption

*Hudak* is this Court's first published case concerning the PREP Act's preemptive effect. Accordingly, it controls. *See Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001). In *Hudak*, this Court recognized that "there is no question that the PREP Act has significant 'pre-emptive force.'" *Hudak*, 58 F.4th at 853 (quoting *Caterpillar*, 482 U.S. at 393). However, the Court held that where a plaintiff "do[es] not allege willful misconduct related to the administration or use of covered COVID-19 countermeasures," the PREP Act does not completely preempt state law claims. *Id.* Every other circuit to have considered the issue has reached the same conclusion. *See, e.g.*, *Solomon v. St. Joseph Hosp.*, 62 F.4th 54, 60–62 (2d Cir. 2023); *Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 406–13 (3d Cir. 2021); *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 584–88 (5th Cir. 2022); *Manyweather v. Woodlawn Manor, Inc.*, 40 F.4th 237, 242–46 (5th Cir. 2022); *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1213–14 (7th Cir. 2022); *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 687–88 (9th Cir. 2022).

---

[1] Since first issuing the Declaration, the Secretary has amended it eleven times, most recently on May 12, 2023. *See* Eleventh Amendment to Declaration Under the [PREP] Act for Medical Countermeasures Against COVID-19, 88 Fed. Reg. 30769.

*Hudak* held that the PREP Act's "general immunity provision," *i.e.*, 42 U.S.C. § 247d-6d(a)(1), "reflects 'an ordinary rule of preemption, a defense to liability under state law.'" *Hudak*, 58 F.4th at 853–54 (quoting *Martin*, 37 F.4th at 1213). Thus, § 247d-6d(a)(1) "does not create a federal cause of action that completely preempts covered state-law claims." *Id.* Instead, it "might or might not provide [Montefiore] with a viable defense in state court." *Id.* In other words, unless a plaintiff states a claim under § 247d-6d(d)(1), complete preemption is disqualified as a basis for removal. *Id.*

*Hudak* did not resolve whether § 247d-6d(d)(1) is completely preemptive. *See id.* at 854. Section 247d-6d(d)(1) establishes "an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct . . . by such covered person." 42 U.S.C. § 247d-6d(d)(1). "Unlike the general immunity provision, it is debatable whether § 247d-6d(d)(1) completely preempts certain state-law claims." *Hudak*, 58 F.4th at 854. The Court in *Hudak* observed that "[o]ther federal courts of appeals have not reached a consensus as to whether the PREP Act completely preempts state-law claims that fall within the scope of § 247d-6d(d)(1)'s federal cause of action," and "declin[ed] to decide whether § 247d-6d(e)(1) is completely preemptive." *Id.* The Court reasoned that it need not make such a determination because the plaintiff's claims did not fall within the scope of the federal cause of action. *Id.*

### i. *Determining Whether Friedman's Claims Fall Under § 247d-6d(d)(1)*

The PREP Act establishes an exclusive federal cause of action for willful misconduct only. *Id.* As the Third Circuit observed, "[w]illful misconduct is a separate cause of action from negligence . . . . Congress could have created a cause of action for negligence or general tort liability. It did not. Just as intentional torts, strict liability, and negligence are independent causes

of action, so too willful misconduct under the PREP Act is an independent cause of action." *Maglioli*, 16 F.4th at 411 (citing Restatement (Second) of Torts § 519 cmt. d (Am. L. Inst. 1977)).

A plaintiff does not allege willful misconduct under § 247d-6d(d)(1) unless the pleading contains: (1) allegations of *willful* misconduct related to the administration or use of covered COVID-19 countermeasures; *and* (2) allegations of "a 'causal relationship with the administration to or use by an individual of a covered countermeasure[.]'" *Hudak*, 58 F.4th at 853–55 (alteration in original) (quoting 42 U.S.C. § 247d-6d(a)(2)(B)). Friedman's complaint contains neither.

First, Friedman does not allege willful misconduct as defined in the PREP Act. To allege willful misconduct under the PREP Act, a plaintiff must "plead with particularity," 42 U.S.C. § 247d-6d(e)(3)(A), that defendants took actions "(i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; *and* (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit," *id.* § 247d-6d(c)(1)(A) (emphasis added). Friedman's complaint does not include all three of those elements. Dispositively, Friedman *never* alleges with particularity that Montefiore acted "intentionally to achieve a wrongful purpose." *Id.* The absence of such an allegation alone is sufficient to defeat Montefiore's preemption argument.[2] *See Hudak*, 58 F.4th at 854.

Second, Friedman's complaint does not satisfy the PREP Act's causality requirement. To bring a willful misconduct claim under the PREP Act, a plaintiff must also allege "a causal relationship with the administration to or use by an individual of a covered countermeasure." *Id.*

---

[2] The district court made this point in its order remanding the case to state court. Montefiore's opening brief is silent on the matter. In its reply brief, Montefiore suggests in a parenthetical that Friedman's allegations concerning test-falsification satisfy this element. However, alleging that Montefiore falsified tests is not enough to plead with particularity that Montefiore acted "intentionally to achieve a wrongful purpose." *Id.* § 247d-6d(c)(1)(A); *see Hudak*, 58 F.4th at 853–55.

§ 247d-6d(a)(2)(B).  A plaintiff must also "plead with particularity . . . each act or omission, by each covered person sued, that is alleged to constitute willful misconduct relating to the covered countermeasure administered to or used by the person on whose behalf the complaint was filed." *Id.* § 247d-6d(e)(3)(A).

> In her complaint, Friedman alleges that Montefiore:

> had been negligently, recklessly, and with malicious intent improperly implementing SARS-COV2 and/or any other form of covid-19 or covid-19 related illness prevention measures.  Moreover, they were negligently, recklessly, and with malicious intent conducting improper testing and falsifying tests.  They intentionally hid the fact that other patients and/or residents of Montefiore had SARS-COV2 and/or any other form of covid-19 or covid-19 related illness.  As a result, Decedent and others were *unnecessarily exposed*, without their knowledge, to SARS-COV2 and/or any other form of covid-19 or covid-19 related illness.

Compl., R. 1-1, Page ID #11 (emphasis added).  Montefiore wrongly contends that this is sufficient to meet § 247d-6d(a)(2)(B)'s causality requirement.  Although it is true that Friedman alleges that Montefiore's test falsification led her to be *exposed* to COVID-19, at no point does she plead with particularity that it led to her *contracting* COVID-19.  Thus, as in *Hudak*, "[n]owhere in the complaint does [Friedman] allege that 'the administration to or use by [decedent] of a' COVID-19 countermeasure caused [her] illness or death."  *Hudak*, 58 F.4th at 856 (quoting 42 U.S.C. § 247d-6d(a)(2)(B)).

In sum, Friedman never alleges with particularity that Montefiore acted "intentionally to achieve a wrongful purpose," as § 247d-6d(c)(1)(A) requires.  Additionally, she does not plead with particularity that Mary's death had a "a causal relationship with the administration to or use by an individual of a covered countermeasure."  *Id.* § 247d-6d(a)(2)(B).  Accordingly, "[b]ecause [Friedman] does not allege willful misconduct within the meaning of the PREP Act, the Act does not provide her with a federal cause of action and her claims are not completely preempted."

*Hudak*, 58 F.4th at 855. Because Friedman does not state a claim under § 247d-6d(e)(1), the Court need not decide whether that provision is completely preemptive. *See id.* at 854.

## 2. Federal Officer Removal Statute

Montefiore also asserts that Friedman's claims are "removable because Defendants were specifically 'acting under' federal officers and federal authority in administering COVID-19 diagnostic tests—a 'covered countermeasure' designated as serving a public health function under the PREP Act." Appellants' Br. at 38.

> A defendant may remove a state court action to federal court if the action is brought against:

> [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1). "Federal courts have subject-matter jurisdiction over claims that are properly removed under § 1442(a)(1)." *Hudak*, 58 F.4th at 858 (citing *Mesa v. California*, 489 U.S. 121, 136 (1989)). In cases where the defendants are not federal officers, the removing defendants "must satisfy three requirements in order to invoke the federal-officer removal statute: (1) the defendants must establish that they acted under a federal officer, (2) those actions must have been performed under color of federal office, and (3) the defendants must raise a colorable federal defense." *Mays v. City of Flint*, 871 F.3d 437, 442–43 (6th Cir. 2017) (citing *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010)).

To demonstrate that it was acting under a federal officer, Montefiore "must show that it was 'in a relationship with the federal government where the government [was] functioning as the defendant's superior.'" *Hudak*, 58 F.4th at 858 (quoting *Mays*, 871 F.3d at 444). Such a "relationship typically involves subjection, guidance, or control." *Watson v. Philip Morris*

*Companies, Inc.*, 551 U.S. 142, 151 (2007) (quotation omitted). "In addition, precedent and statutory purpose make clear that the private person's 'acting under' must involve an effort to *assist,* or to help *carry out,* the duties or tasks of the federal superior." *Id.* at 152. Importantly, "the help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law." *Id.*

In *Hudak*, the defendants made the same argument that Montefiore makes in this appeal. The Court in *Hudak* expressly rebuffed the defendants' arguments that they were "acting under" a federal officer because they had to comply with federal mandates, and because they "performed a governmental function by helping to contain the spread of the COVID-19 virus." *Hudak*, 58 F.4th at 859. Montefiore's arguments fail for the same reason: Montefiore "did not have an agreement with the federal government, did not produce a good or perform a service on behalf of the government, and has not shown that the federal government exercised control over its operations to such a degree that the government acted as [Montefiore's] superior." *Id.* at 859–60. The Court's analysis in *Hudak* applies verbatim to the instant appeal. Put simply, in passing the PREP Act, "Congress did not deputize all of these private-sector workers as federal officers." *Maglioli*, 16 F.4th at 406. A party cannot invoke the federal officer removal statute simply because it complied with federal law. *Watson*, 551 U.S. at 152.

## CONCLUSION

For the reasons stated above, the district court's order remanding this case to state court is **AFFIRMED**.