# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2757
_____

Zane Cagle, Individually, and in a Representative Capacity for All Persons
Identified by RSMo 537.080,

*Plaintiff - Appellee*,

v.

NHC Healthcare-Maryland Heights, LLC; NHC/OP, LP; NHC/Delaware, Inc.;
National Healthcare Corporation, Delaware,

*Defendants - Appellants*.

------------------------------

United States Chamber of Commerce; Missouri Chamber of Commerce and
Industry; American Medical Association; MISSOURI STATE MEDICAL
ASSOCIATION; DRI Center for Law and Public Policy,

*Amici on Behalf of Appellant(s)*,

Justice in Aging, formerly known as National Senior Citizens Law Center; AARP;
AARP Foundation,

*Amici on Behalf of Appellee(s)*.
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: April 13, 2023
Filed: August 28, 2023
_____

Before COLLOTON, WOLLMAN, and GRUENDER, Circuit Judges.
_____

COLLOTON, Circuit Judge.

In June 2020, Willis Cagle died from COVID-19. He allegedly contracted the disease at his nursing home, NHC HealthCare-Maryland Heights, LLC. His son, Zane Cagle, brought suit in Missouri state court against the nursing home, three corporate entities that own the facility, and twelve administrators and medical professionals employed by NHC HealthCare-Maryland Heights, LLC. The nursing home and the three corporate entities removed the case to federal court, but the district court[*] concluded that it lacked subject matter jurisdiction, and remanded the case to state court. The NHC entities appeal and argue that removal was proper. We affirm the remand order of the district court.

I.

Zane Cagle's complaint alleges that Willis Cagle resided at NHC HealthCare-Maryland Heights, LLC from April 18 to May 29, 2020. Beginning in May 2020, numerous residents contracted COVID-19 and died from the disease. According to the complaint, the nursing home failed to follow proper infection control procedures to prevent and control this outbreak. The complaint alleges that the facility allowed staff with COVID-19 symptoms to work with the residents, failed to quarantine contagious residents from the rest of the nursing home's population, did not train staff on how to use personal protective equipment, and did not require its staff to adhere to social distancing guidelines.

_____

[*]The Honorable Ronnie L. White, United States District Judge for the Eastern District of Missouri.

On May 20, 2020, Willis Cagle was diagnosed with COVID-19. Following this diagnosis, Zane Cagle alleges that the nursing home failed adequately to monitor and respond to his father's deteriorating condition. On May 29, Willis Cagle was transported to a hospital where he was treated for COVID-19 symptoms until he passed away from the disease on June 12, 2020.

Zane Cagle, a Missouri citizen, sued NHC Healthcare-Maryland Heights, LLC, NHC/OP, LP, NHC/Delaware, Inc., National HealthCare Corporation, and twelve staff members of the nursing home in the Missouri state court. He asserted Missouri causes of action for wrongful death, negligence *per se*, and lost chance of survival. The NHC entities, none of which is a Missouri citizen, were served on November 23, 2021. Most of the individual defendants are Missouri citizens, but they were not served immediately. On December 7, 2021, before any of the individual defendants had been served, the NHC entities removed the case to federal district court.

The NHC entities asserted three independent grounds for federal jurisdiction. First, they argued that diversity of citizenship jurisdiction existed, because none of the "properly joined and served" defendants were Missouri citizens like the plaintiff, Zane Cagle. Second, while the complaint alleged exclusively state law claims, the NHC entities argued that the case arose under the laws of the United States. The companies maintained that the state law claims are "completely preempted" by the Public Readiness and Emergency Preparedness Act (the "PREP Act"), 42 U.S.C. §§ 247d-6d, 247d-6e, and that the claims "necessarily raise" a substantial, disputed federal question. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Third, the NHC entities contended that due to the extensive federal regulation of nursing homes during the COVID-19 pandemic, they "acted under" a federal officer for the purpose of 28 U.S.C. § 1442(a)(1).

The district court disagreed on all fronts, and remanded the case to state court. The NHC entities appeal, and we review the district court's decision *de novo*.

II.

Under 28 U.S.C. § 1441(a), a defendant may remove a civil action from state court to federal court when the action could originally have been brought in a federal district court. The NHC entities first rely on a district court's jurisdiction over civil suits between "citizens of different States" when the matter in controversy exceeds $75,000. 28 U.S.C. § 1332(a). To establish federal jurisdiction, the parties must be completely diverse: no plaintiff can be a citizen of the same State as any defendant. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

In evaluating the complete diversity of the parties, we consider the citizenship of all of the defendants named in the complaint. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005). Whether all of the named parties have been served with process is irrelevant when evaluating diversity of citizenship. *Pecherski v. Gen. Motors Corp.*, 636 F.2d 1156, 1160-61 (8th Cir. 1981). If complete diversity exists—that is, the case could have "originally been brought" in a federal district court—then 28 U.S.C. § 1441(b)(2) imposes the additional requirement: none of the "parties in interest properly joined and served as defendants" may be citizens of the forum State. So in order to remove a suit from state court to federal court based on diversity jurisdiction, there must be complete diversity between all named plaintiffs and all named defendants, and no "properly joined and served" defendant can be a citizen of the forum State. *Lincoln Prop.*, 546 U.S. at 84.

The removal here falters on the first of these requirements: the parties do not dispute that Zane Cagle shares Missouri citizenship with some of the named individual defendants. The NHC entities assert that under a so-called "snap removal," complete diversity is required among only the "properly joined and served" defendants. That is not correct. A snap removal—the practice of removing a case before the plaintiff has "properly joined and served" the forum-state defendant—arguably allows a defendant to satisfy the additional requirement of

§ 1441(b)(2) that no "properly joined and served" defendant is a citizen of the forum State. But snap removal does not cure a lack of complete diversity among the named parties. Without complete diversity of citizenship, Zane Cagle's suit could not have been brought in a federal district court, and the case cannot be removed based on diversity of citizenship.

The NHC entities next suggest that the district court had original jurisdiction because the action arose under the Constitution, law, or treaties of the United States, or under federal common law. *See* 28 U.S.C. § 1331; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Whether the action presents a federal question generally is governed by the "well-pleaded complaint rule," under which federal jurisdiction "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc.*, 482 U.S. at 392. The potential availability of a federal defense does not create federal question jurisdiction. *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.,* 463 U.S. 1, 10 (1983). But there are two exceptions to the well-pleaded complaint rule that allow for removal even when a federal question does not appear on the face of a complaint: when the state law claims "(1) are completely preempted by federal law or (2) necessarily raise a substantial, disputed federal question." *Minnesota v. Am. Petrol. Inst.*, 63 F.4th 703, 709 (8th Cir. 2023).

Although Zane Cagle's complaint pleads only state law causes of actions on its face, the NHC entities maintain that both exceptions to the well-pleaded complaint rule apply based on the federal PREP Act. This Act authorizes the Secretary of the Department of Health and Human Services to declare that a disease is a public emergency and to define appropriate "covered countermeasures" to the disease. 42 U.S.C. § 247d-6d(b)(1). "Covered countermeasures" include drugs, biological products, or devices that mitigate the disease's harm. 42 U.S.C. § 247d-6d(i)(1).

The PREP Act immunizes covered individuals from suit for injuries "caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1). If an injured person's claim fails within this immunity, then he can seek recourse under an administrative compensation scheme established by the Act. 42 U.S.C. § 247d-6e. The Act provides no immunity where a covered person's "willful misconduct" is the proximate cause of a person's injuries. The statute creates an exclusive federal cause of action for claims based on willful misconduct. 42 U.S.C. § 247d-6d(d)(1).

The complete preemption rule applies when a federal statute "wholly displaces the state-law cause of action," such that "a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). Ordinary preemption, a federal defense that exists where a federal law has superseded a state law claim, does not provide a basis for removal. *Johnson v. MFA Petrol. Co.*, 701 F.3d 243, 248 (8th Cir. 2012). To establish complete preemption, Congress must have intended the federal statute to provide "the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Beneficial Nat'l Bank*, 539 U.S. at 8.

Section 247d-6d(a)(1) of the PREP Act provides that if an individual is injured by the use of a "covered countermeasure," a covered person shall be immune from suit for claims arising out of his injuries. This immunity, however, does not create a cause of action against a covered person, let alone an exclusive one. The statute affords a federal defense to liability under state law—a rule of ordinary preemption. *See Solomon v. St. Joseph Hosp.*, 62 F.4th 54, 61-62 (2d Cir. 2023); *Hudak v. Elmcroft of Sagamore Hills*, 58 F.4th 845, 855 (6th Cir. 2023); *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1213 (7th Cir. 2022); *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 587-88 (5th Cir. 2022); *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 688 (9th Cir. 2022); *Maglioli v. Alliance HC Holdings LLC*, 16

F.4th 393, 411-12 (3d Cir. 2021). Congress created only one exclusive federal cause of action against covered persons for injuries proximately caused by their "willful misconduct." 42 U.S.C. § 247d-6d(d)(1). Zane Cagle's complaint asserts negligence, but does not allege willful misconduct by the defendants.

The NHC entities rely on an advisory opinion of the General Counsel at the Department of Health and Human Services, incorporated into a declaration by the Secretary, that the immunity provision of § 247d-6d(a)(1) is a complete preemption statute. *See* Dep't of Health & Human Servs., Off. of the Gen. Counsel, Advisory Opinion 21-01 on the Pub. Readiness and Emergency Preparedness Act Scope of Preemption Provision 2-3 (Jan. 8, 2021); Fifth Amendment to Declaration Under the Pub. Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 86 Fed. Reg. 7872, 7874 (Feb. 2, 2021). Like every circuit to consider this question, however, we conclude that the legal conclusion of the general counsel is not entitled to controlling deference. Ordinary principles of interpretation establish unambiguously that the PREP Act does not completely preempt state causes of action for negligence. *See Solomon*, 62 F.4th at 62; *Martin*, 37 F.4th at 1214; *Mitchell*, 28 F.4th at 585 n.3; *Saldana*, 27 F.4th at 687; *Maglioli*, 16 F.4th at 403-04.

The NHC entities assert that even if Zane Cagle's claims are not "completely preempted" by the PREP Act, they raise a federal question under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005). In this "special and small category of cases," federal jurisdiction over a state law claim will lie if a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (internal quotation omitted). A state law claim "necessarily raises" a federal issue when the question of federal law is a "necessary element of one of the well-pleaded state claims." *Franchise Tax Bd.*, 463 U.S. at 13.

The NHC entities have not identified a federal issue that is a necessary element of Zane Cagle's state law claims. These claims instead will turn on issues such as whether the nursing home enforced social distancing policies, quarantined residents infected with the virus away from other residents, allowed its staff to work while exhibiting COVID-19 symptoms, promptly responded to Willis Cagle's symptoms, and the like. *See Martin*, 37 F.4th 1210, 1214-15. That the NHC entities intend to assert PREP Act immunity as a defense to the state law claims does not create federal jurisdiction. *Franchise Tax Bd.*, 463 U.S. at 14; *see Solomon*, 62 F.4th at 64; *Hudak*, 58 F.4th at 858; *Mitchell*, 28 F.4th at 589; *Saldana*, 27 F.4th at 688-89; *Maglioli*, 16 F.4th at 413.

The last asserted basis for removal is 28 U.S.C. § 1442. This section authorizes the removal of a civil action that is brought against an "officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

The federal officer removal statute authorizes removal of Cagle's suit only if the NHC entities show that the nursing home was "acting under" an "agency" or "officer" of the United States in carrying out the acts that are the subject of Cagle's complaint. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007). To meet this standard, the record must establish that (1) the nursing home acted under the direction of a federal officer, (2) there is a causal connection between the nursing home's actions and the official authority, (3) the nursing home has a colorable federal defense to Zane Cagle's claims, and (4) the nursing home is a "person" within the meaning of the statute. *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 738 (8th Cir. 2021). To "act under" a federal officer, a private entity's actions "must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 152. "That relationship typically involves subjection, guidance, or control." *Id*. at 151 (internal quotation omitted).

-8-

The NHC entities assert that the nursing home "acted under" the direction of a federal officer, because the government designated nursing homes as "critical infrastructure" during the COVID-19 pandemic, and subjected these facilities to extensive regulation. But compliance with even pervasive federal regulation is not sufficient to show that a private entity acted under the direction of a federal officer. *Buljic*, 22 F.4th at 739. The Supreme Court has "distinguished entities doing business in areas subjected to intense regulation—which could not remove an action under [§ 1442] on that basis alone—with private contractors under close supervision by the federal government, which could." *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1231-32 (8th Cir. 2012).

While the NHC entities no doubt played an important role during the COVID-19 pandemic, "[i]t cannot be that the federal government's mere designation of an industry as important—or even critical—is sufficient to federalize an entity's operations and confer federal jurisdiction." *Buljic*, 22 F.4th at 740. Rather, "[p]rivate firms retain their private character even when many aspects of their conduct are controlled by federal statutes and rules." *Martin*, 37 F.4th at 1213. We held in *Buljic* that a food processing company did not "act under" a federal officer although the "food and agriculture" sector had been designated as "critical infrastructure" during the pandemic. 22 F.4th at 740-41. We reach the same conclusion as to the nursing home here. Removal is thus not authorized under 28 U.S.C. § 1442. *See Solomon*, 62 F.4th at 63; *Hudak*, 58 F.4th at 859-60; *Martin*, 37 F.4th at 1213; *Mitchell*, 28 F.4th at 590-91; *Saldana*, 27 F.4th at 685-86; *Maglioli*, 16 F.4th at 405-06.

The judgment of the district court is affirmed.

_____