**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3287
_____

VANESSA SHEROD, as Administrator of the Estate of Elizabeth Wiles,
and in her Own Right

v.

COMPREHENSIVE HEALTHCARE MANAGEMENT SERVICES, LLC, d/b/a
Brighton Rehabilitation and Wellness Center; COMPREHENSIVE MANAGEMENT
SERVICES PROPERTY, LLC; CHMS GROUP, LLC; SAMUEL HARPER; EPHRAM
LAHASKY; HEALTHCARE SERVICES GROUP, INC.; HCSG LABOR SUPPLY,
LLC; HCSG SUPPLY, INC.; HCSG STAFF LEASING SOLUTIONS, LLC; QUALITY
BUSINESS SOLUTIONS INC; BRIAN EDWARD MEJIA

Comprehensive Healthcare Management Services, LLC d/b/a
Brighton Rehabilitation and Wellness Center,
                                                                Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-20-cv-01198)
District Judge:  Honorable Arthur J. Schwab
_____

Submitted Under Third Circuit L.A.R. 34.1(a):
September 5, 2023

Before: CHAGARES, Chief Judge, HARDIMAN and FREEMAN,
Circuit Judges.

(Filed: September 27, 2023)

_____

OPINION[*]

_____

CHAGARES, <u>Chief</u> <u>Judge</u>.

This appeal presents the latest in a series of disputes over whether cases alleging that medical facilities negligently responded to the COVID-19 pandemic will be heard in state or federal court. Vanessa Sherod brought a lawsuit in Pennsylvania state court against Comprehensive Healthcare Management Services, LLC, several affiliated entities, and several executives (collectively, "Comprehensive Healthcare") alleging that her mother Elizabeth Wiles contracted COVID-19 and passed away because Comprehensive Healthcare negligently managed a COVID-19 outbreak in the nursing home where Wiles worked. Comprehensive Healthcare removed the case to federal court, but the District Court granted Sherod's motion to remand, holding that there was no basis for federal jurisdiction over Sherod's claims. Because we reached the same conclusion when presented with very similar facts and arguments in our recent decision in <u>Maglioli v. Alliance HC Holdings LLC</u>, 16 F.4th 393 (3d Cir. 2021), we will affirm.

I.

We write primarily for the parties and recite only the facts essential to our decision. Wiles worked at a Pennsylvania nursing home owned and operated by Comprehensive Healthcare. The nursing home suffered a COVID-19 outbreak in spring

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

2020, early in the COVID-19 pandemic.  The outbreak became widespread in April 2020, and on May 8, 2020, Pennsylvania National Guard officers and Pennsylvania Department of Health officials deployed to the nursing home to assist in managing the outbreak and train nursing home staff on managing COVID-19 risks.  Sadly, Wiles contracted COVID-19 and passed away on May 10, 2020.

In July 2020, Appellee Vanessa Sherod — Wiles's daughter and the administrator of her estate — brought a lawsuit against Comprehensive Healthcare in the Court of Common Pleas of Allegheny County, Pennsylvania.  Sherod's complaint mainly alleged that Wiles died because Comprehensive Healthcare negligently managed COVID-19 risks, including by failing to provide appropriate personal protective equipment and failing to follow federal guidance on COVID-19 risks.  Sherod also asserted claims for fraudulent misrepresentation and intentional misrepresentation,[1] as well as claims under the Pennsylvania Wrongful Death Act, 42 Pa. Cons. Stat. Ann. § 8301, and the state Survival Act, 42 Pa. Cons. Stat. Ann. § 8302.  All of these claims arose under Pennsylvania law.

---

[1] Sherod voluntarily dismissed her fraudulent and intentional misrepresentation claims in post-remand proceedings before the state court.  But it is a long-standing rule that "events occurring subsequent to removal . . . whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached."  St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 293 (1938); see also Westmoreland Hosp. Ass'n v. Blue Cross of W. Pa., 605 F.2d 119, 123 (3d Cir. 1979) ("A subsequent amendment to the complaint after removal designed to eliminate the federal claim will not defeat federal jurisdiction.").  So we must consider the complaint as it existed when removed.

Comprehensive Healthcare timely removed the case to federal court.  As a basis for removal, Comprehensive Healthcare cited federal question jurisdiction under 28 U.S.C. § 1331 and federal officer removal under 28 U.S.C. § 1442(a)(1).  Sherod moved to remand.  The District Court granted the motion to remand, holding that neither the federal question jurisdiction statute nor the federal officer removal statute provided a basis for federal jurisdiction.  Comprehensive Healthcare filed two motions to stay the remand, both of which the District Court denied.  Comprehensive Healthcare then timely appealed.[2]

After Sherod moved to dismiss the appeal in part for lack of jurisdiction, we stayed briefing.  Sherod withdrew that motion after the Supreme Court's decision in B.P. PLC v. Mayor of Baltimore, 141 S. Ct. 1532 (2021).  But we again stayed briefing pending our resolution of two cases presenting related issues about the removability of state-law tort cases alleging that medical facilities negligently managed the COVID-19 pandemic.  Once we issued our consolidated decision in those cases, Maglioli v. All. HC Holdings LLC, 16 F.4th 393 (3d Cir. 2021), we instructed the parties to brief this appeal.

II.

The District Court was obligated to grant Sherod's motion to remand her lawsuit to state court unless Comprehensive Healthcare was able to either:  (1) demonstrate that the District Court would have had original jurisdiction over Sherod's lawsuit had the case

---

[2] While the appeal was pending, Comprehensive Healthcare filed a second notice of removal and the District Court issued another order remanding the case to state court shortly thereafter.

first been filed there, 28 U.S.C. § 1441(a); or (2) demonstrate that it was authorized to remove the case under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). See Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007) ("[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court."). In its notice of removal, Comprehensive Healthcare contended that it was entitled to remove the case on both grounds, and it argues on appeal that the District Court erred by rejecting both.[3] Our review of the District Court's decision is de novo. Avenatti v. Fox News Network LLC, 41 F.4th 125, 129 (3d Cir. 2022). We agree with the District Court that Comprehensive Healthcare's arguments in favor of removal lack merit.

A.

Comprehensive Healthcare argues that Sherod's state-law claims are completely preempted by the federal Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C. § 247d et seq., giving rise to federal question jurisdiction under 28 U.S.C. § 1331. There is no dispute that the PREP Act, a federal statute giving the

---

[3] Ordinarily, we lack appellate jurisdiction to review a district court order granting a motion to remand. 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal . . . ."). But in this case, Comprehensive Healthcare's notice of removal cites the federal officer removal statute, 28 U.S.C. § 1442. We have jurisdiction to review orders remanding cases that are removed under the federal officer removal statute. 28 U.S.C. § 1447(d) (prescribing that cases "removed pursuant to [28 U.S.C. § 1442] shall be reviewable by appeal"). Because we have jurisdiction to review the part of the District Court's remand order addressing federal officer removal, we have jurisdiction to review the rest of the District Court's remand order as well. Maglioli, 16 F.4th at 402–03 (citing B.P. PLC, 141 S. Ct. at 1538).

5

Secretary of Health and Human Services certain authorities to respond to public health emergencies, preempts certain state-law claims. It provides "immun[ity] from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure" during certain declared public health emergencies. 42 U.S.C. § 247d-6d(a)(1). But federal statutes with preemptive effect, like the PREP Act, generally provide only "a defense to state-law claims," not an independent basis for federal question jurisdiction. Maglioli, 16 F.4th at 406. And a defendant with a potentially valid federal preemption defense must generally litigate that defense in state court unless there is a separate basis for federal jurisdiction; a defendant may not remove a case to federal court solely because of a federal preemption defense. This is because a federal preemption defense "does not appear on the face of the well-pleaded complaint," id. at 407, and federal jurisdiction is usually determined by whether "a federal question is presented on the face of the plaintiff's properly pleaded complaint," Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).

Complete preemption is an exception to this general rule. In a narrow category of cases, "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character," even if such a complaint purports to rest exclusively on state law. Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63–64 (1987). But complete preemption is available only when "the federal statute[] at issue provide[s] the exclusive cause of action for the claim asserted and also set[s] forth procedures and remedies governing that cause of action." Beneficial Nat.

6

Bank v. Anderson, 539 U.S. 1, 8 (2003). In Maglioli, we concluded that a New Jersey state law negligence claim was not completely preempted by the PREP Act. We explained in Maglioli that, while the PREP Act provides an exclusive federal cause of action for "willful misconduct," 42 U.S.C. § 247d-6d(d)(1), it does not provide a cause of action for negligence, and the elements of the PREP Act willful misconduct cause of action differ from the elements of a common-law negligence claim. 16 F.4th at 410–11. Because the Maglioli plaintiffs alleged a common-law negligence claim with elements differing from those of the PREP Act willful misconduct cause of action and did not allege facts that could have stated a claim for willful misconduct under the PREP Act, we held that the PREP Act did not completely preempt those claims. Id. at 411.

Looking, as the Maglioli court did, to both the elements of the causes of action Sherod brings and the specific facts she alleges in her complaint, we reach the same result here.[4] Sherod alleges common-law negligence under Pennsylvania law. The elements of her common-law negligence claim differ from the elements of the PREP Act willful misconduct cause of action. Compare Brewington for Brewington v. City of Phila., 199 A.3d 348, 355 (Pa. 2018) ("In Pennsylvania, the elements of negligence are:  a duty to

---

[4] Comprehensive Healthcare also contends that we should revisit Maglioli's complete preemption holding. But it points to no new authority undermining that holding. Indeed, the opposite is true:  since the issuance of Maglioli, a consensus among the Courts of Appeals has emerged in favor of our complete preemption holding. See Solomon v. St. Joseph Hosp., 62 F.4th 54, 60–62 (2d Cir. 2023); Hudak v. Elmcroft of Sagamore Hills, 58 F.4th 845, 854–57 (6th Cir. 2023); Martin v. Petersen Health Operations, LLC, 37 F.4th 1210, 1213–14 (7th Cir. 2022); Mitchell v. Advanced HCS, L.L.C., 28 F.4th 580, 586–87 (5th Cir. 2022); Saldana v. Glenhaven Healthcare LLC, 27 F.4th 679, 686–88 (9th Cir. 2022).

conform to a certain standard for the protection of others against unreasonable risks; the defendant's failure to conform to that standard; a causal connection between the conduct and the resulting injury; and actual loss or damage to the plaintiff."), with Maglioli, 16 F.4th 410 (holding that a PREP Act willful misconduct plaintiff must prove "(1) an act or omission, that is taken (2) intentionally to achieve a wrongful purpose, (3) knowingly without legal or factual justification, and (4) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit" (quotation marks omitted)).  The negligence claim Sherod alleges does not require her to prove the same level of intent required for a PREP Act willful misconduct claim so the PREP Act does not completely preempt it.  This is true even though Sherod alleges that Comprehensive Healthcare engaged in "willful, reckless and wanton" conduct.  App. 70. See Maglioli, 16 F.4th at 411 (rejecting complete preemption when the core of the plaintiff's complaint was negligence, despite a "fleeting statement" in the plaintiff's complaint that the defendants "engaged in conduct that was grossly reckless, willful, and wanton" (quotation marks omitted)).

Similarly, Sherod's misrepresentation claims could not have been brought as willful misconduct claims under the PREP Act.  The elements of fraudulent or intentional misrepresentation under Pennsylvania law are: "(1) a representation; (2) that is material . . . ; (3) made falsely, with knowledge of its falsity or reckless disregard as to whether it is true or false; (4) with the intent to mislead another person into relying on it; (5) justifiable reliance; and (6) an injury proximately caused by the reliance."  Gregg v. Ameriprise Fin., Inc., 245 A.3d 637, 645–46 (Pa. 2021).  Though (unlike the negligence

claim) that claim may require proof of the "intent[] to achieve wrongful purpose,"

Maglioli, 16 F.4th 410 — specifically, to mislead another — the tort need not be committed "knowingly without legal or factual justification," id. Instead, the misrepresentation can be made with "reckless disregard" as to the factual justification. Gregg, 245 A.3d at 646. And PREP Act claims require more than recklessness. 42 U.S.C. § 247d-6d(c)(1)(B).

Maglioli also counsels that "we must look beyond the estates' claims" and ask "whether the estates' allegations fall within the scope of the PREP Act's cause of action—that is, whether the claims could have been brought under that section." 16 F.4th at 411 (first emphasis added and quotation marks omitted). Here, like in Maglioli, the factual allegations in the complaint do not bring it within the purview of a willful misconduct claim. The bulk of the complaint highlights Comprehensive Healthcare's alleged failures to adequately protect, train, and warn its employees, but does not plead that these failures were "intend[ed] to achieve a wrongful purpose," 42 U.S.C. § 247d-6d(c)(1)(A)(i), rather than just negligent or reckless. And while two counts of the complaint allege that Comprehensive Healthcare intentionally deceived its employees about COVID-19 management in order to make money and deceive government agencies, the complaint does not plead with particularity "each act or omission, by each covered person sued, that is alleged to constitute willful misconduct" as required to state a claim under the PREP Act. 42 U.S.C. § 247d-6d(e)(3).

Accordingly, the District Court correctly concluded that Comprehensive Healthcare could not remove Sherod's case on the grounds of complete preemption.

9

B.

Comprehensive Healthcare also argues that even if the PREP Act does not completely preempt Sherod's state-law claims, the preemptive effect of the PREP Act on Sherod's claims presents a federal question that is inherently embedded in Sherod's state-law claims and creates federal question jurisdiction under the principles set forth in Grable & Sons Metal Products v. Darue Eng'g & Mfg., 545 U.S. 308 (2008), and its progeny.[5]  An embedded federal issue sufficient to confer federal question jurisdiction in a case arising under state law exists when the federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  Gunn v. Minton, 568 U.S. 251, 258 (2013).  Comprehensive Healthcare contends that the federal issues "necessarily raised" involve the preemptive effect of the PREP Act.  But as we explained when we addressed a very similar argument in Maglioli, the potential preemptive effect of the PREP Act is not necessarily raised by a state-law claim involving these allegations. Sherod could "properly plead [her] state-law . . . claims without mentioning the PREP

_____

[5] The District Court did not address this argument in its order, but Comprehensive Healthcare raised it in its notice of removal and its briefing before the District Court, so we may consider it on appeal.

10

Act." Maglioli, 16 F.4th at 413. Therefore, Comprehensive Healthcare cannot invoke federal question jurisdiction based on an embedded federal issue in Sherod's complaint.

C.

Comprehensive Healthcare also argues that it was entitled to remove Sherod's lawsuit to federal court under the federal officer removal statute. The federal officer removal statute permits private parties, like Comprehensive Healthcare, to remove a case to federal court when the plaintiff's claims are based on the defendant's actions while the defendant was "acting under" the United States or a federal officer. 28 U.S.C. § 1442(a)(1).[6] Comprehensive Healthcare contends that it was acting under a federal officer in two senses: the nursing home was complying with federal COVID-19 regulations and guidance as it managed the outbreak, and it was operating under the supervision of National Guard troops during the COVID-19 outbreak. Neither of Comprehensive Healthcare's "acting under" arguments is persuasive.

In Maglioli, we rejected an argument much like Comprehensive Healthcare's argument that its compliance with federal regulation and guidance meant it was "acting under a federal officer." We explained that "[m]erely complying with federal laws and regulations is not 'acting under' a federal officer for purposes of federal-officer removal"; a private party seeking to invoke the federal officer removal statute must show that its

---

[6] A private defendant seeking to invoke the federal officer removal statute must also satisfy certain other requirements. Maglioli, 16 F.4th at 404. We need not address them here because, for the reasons we explain in this section, Comprehensive Healthcare was not "acting under" a federal officer at the time of the conduct that gave rise to Sherod's claims.

11

"actions 'involve an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" 16 F.4th 404–05 (quoting Watson v. Philip Morris Cos., 551 U.S. 142, 152 (2007)). Comprehensive Healthcare seeks to distinguish the regulatory regime it faced from the regulatory regime at issue in Maglioli, but like the nursing homes in Maglioli, it cannot show that its compliance with federal regulations amounted to an effort to "assist . . . the duties . . . of the federal superior." Id. Its argument that federal regulation of its business entitles it to invoke the federal officer removal statute is therefore unavailing.

We need not determine whether Comprehensive Healthcare was acting under federal officers after National Guard troops responded to the COVID-19 outbreak at the nursing home, because those troops had not yet been deployed when Comprehensive Healthcare allegedly engaged in the negligent conduct outlined in Sherod's complaint. Sherod alleges in her complaint a variety of negligent conduct by Comprehensive Healthcare, but crucially, it all occurred before National Guard troops deployed to the nursing home on May 8, 2020. She does not allege that Comprehensive Healthcare engaged in any negligent conduct at the direction of National Guard troops, nor does she allege that any negligent conduct occurred after the National Guard deployed to the facility. Indeed, she alleges the opposite: that workers at the nursing home "received training – provided by the National Guard – to assist in curbing the virus" for the first time after National Guard troops arrived. Comprehensive Healthcare therefore cannot rely on the presence of National Guard officers at the nursing home at some point during the 2020 COVID-19 outbreak as a basis for invoking the federal officer removal statute.

12

## III.

For the foregoing reasons, we will affirm the District Court's order granting Sherod's motion to remand.